United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 27, 2005**

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals*
*For the Fifth Circuit*

No. 03-51139

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TRAVIS JAMES HARRIS,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, DENNIS and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Travis James Harris signed a waiver of his right to appeal his conviction and sentence but reserved "the right to appeal a sentence in excess of the Guidelines." Because the district court correctly applied the Sentencing Guidelines and the sentence imposed did not exceed them, the appeal should be dismissed.

1

# I

Harris threw a homemade explosive device, a "Molotov cocktail," into the City of Monahans Muncipial Building in Monahans, Texas causing an explosion and an ensuing fire that severely damaged the building. Based on this conduct, Harris was charged with violating sections 844(i) and 924(c)(1) of Title 18 of the U.S. Code. He pleaded guilty, and as part of his guilty plea, agreed to the following waiver of appeal:

> The Defendant waives the right to appeal any aspect of the conviction and sentence, and waives the right to seek collateral relief in post conviction proceedings, including proceedings under 28 U.S.C. § 2255. This waiver does not apply to ineffective assistance of counsel or prosecutorial misconduct of constitutional dimension of which the Defendant did not have knowledge at the time of sentencing. Defendant reserves the right to appeal a sentence in excess of the Guidelines.

The last sentence, "Defendant reserves the right to appeal a sentence in excess of the Guidelines," was a handwritten provision inserted into the otherwise typed plea agreement.

After Harris entered his guilty plea, a United States probation officer prepared a presentence investigation report (PSR). For the first offense, the PSR recommended a twelve-step increase in base offense level and a five-step increase in criminal history category based on the officer's conclusion that the felony "involved, or was intended to promote, a federal crime of terrorism" within the meaning of section 3A1.4 of the United States Sentencing Guidelines Manual (U.S.S.G.). Harris objected, arguing among other things that he did not intend to promote a federal crime of terrorism, his conduct did not transcend national boundaries, and he was not charged with violation of 18 U.S.C. § 2332b, the terrorism statute. For the second offense, the PSR recommended a consecutive sentence of no less than 120 months.

The district court followed the PSR's recommmendations. Harris received the maximum statutory term of imprisonment for the first offense, 240 months, and a consecutive term of 120

months for the second offense. Harris's punishment also included supervised release, restitution, and a special assessment. Harris appeals his sentence for the first offense, arguing that he did not commit a "federal crime of terrorism" for purposes of U.S.S.G. § 3A1.4.

## II

The government contends that we should dismiss this appeal without reaching the question of whether Harris's conduct was a "federal crime of terrorism." The government interprets the sentence "Defendant reserves the right to appeal a sentence in excess of the Guidelines" in Harris's waiver of appeal to mean that we may only examine an upward departure from whatever guideline provisions the court below chose to apply, and because there was no upward departure from the guidelines the district court concluded were applicable, the sentence is not "in excess of the Guidelines." We are foreclosed, the government says, from examining whether the district court applied the correct guideline provisions. The government contends that no matter how substantial an error the district court may have made in deciding which guidelines applied, the appeal waiver prohibits review. We cannot read the waiver of appeal that broadly.

If the appeal waiver read, "Defendant reserves the right to appeal a sentence in excess of the statutory maximum," we would not construe that waiver to mean that we are barred from considering whether the district court applied the correct statute in order to determine if the sentence the defendant received exceeded the applicable statutory maximum. Here, we must consider whether the court applied the correct guidelines in order to determine if the sentence imposed exceeded the applicable guidelines.

The sentence "Defendant reserves the right to appeal a sentence in excess of the Guidelines" does not unambiguously waive a complaint that the wrong guidelines were applied, and any ambiguity

must be construed in favor of the defendant's right to appeal.[1] A criminal defendant's waiver of the right to appeal relinquishes significant rights. Such a waiver therefore involves special concerns and will be narrowly construed.[2] "[T]he right of appeal should not be considered as having been waived or abandoned except where it is clearly established that this is the case."[3] The phrase "in excess of the Guidelines" does not clearly establish that the defendant agreed that inapplicable guidelines would be the benchmark by which his right to appeal would be measured.

Harris contends that the district court erred in concluding that the offense to which he pleaded guilty "involved, or was intended to promote, a federal crime of terrorism."[4] At the time Harris was sentenced, the Guidelines were mandatory, and under section 3A1.4 of the Guidelines, the district court's determination meant that the court was to apply an upward adjustment of 12 to Harris's base offense level and that his criminal history category would automatically be VI.[5] Harris's criminal history category would otherwise have been I, and the upward adjustment by 12 levels was similarly

---

[1]*See United States v. Somner*, 127 F.3d 405, 408 (5th Cir. 1997).

[2]*See id.* ("The waiver [of appeal] must be construed against the government." (citing *United States v. Rosa*, 123 F.3d 94, 98 (2d Cir. 1997) ("[W]aivers of th[e] right [to appeal] must be closely scrutinized and applied narrowly."))).

[3]*McKinney v. United States*, 403 F.2d 57, 59 (5th Cir. 1968).

[4]U.S.S.G. § 3A1.4.

[5]Section 3A1.4 provides:

(a)    If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

(b)    In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

*Id*.

4

significant. If Harris's offense was not a federal crime of terrorism, the district court did not apply the correct guidelines, and his sentence would exceed the guideline range by nearly 200 months.

This court strongly implied, if not held, in *United States v. McKinney* that an analogous waiver required a determination of whether the guideline range had been calculated properly.[6] In that case, McKinney waived appeal "unless the Court upwardly departs from the guidelines."[7] The district court sentenced him to 84 months, which was a downward departure from that court's calculation of a guideline range of 135 to 168 months. On appeal, McKinney contended that the district court incorrectly applied the Sentencing Guidelines because it considered facts that he had not admitted and that had not been found by a jury, citing *United States v. Booker*.[8] This court concluded that if McKinney's argument were correct and his guilty plea authorized a maximum of 54 months imprisonment, then the appeal waiver would not apply because he was sentenced to 84 months, 30 months in excess of the Guidelines.[9] The court concluded, however, that *Booker* did not change "what an *appropriate* guidelines range is,"[10] and therefore "the range from which we determine whether McKinney was granted an upward departure (for the purpose of the appeal-waiver provision) was 135 to 168 months."[11] This court recognized that it was necessary to decide whether the

---

[6] 406 F.3d 744, 746 (5th Cir. 2005).

[7] *Id.*

[8] 125 S. Ct. 738 (2005).

[9] *McKinney*, 406 F.3d at 746 ("Assuming *arguendo* that McKinney's calculations are correct, this definition of 'guidelines range' would allow him to avoid the appeal waiver provisions, because he was sentenced to 84 months, and he claims that the facts admitted in his guilty plea authorized a maximum of only 57 months.").

[10] *Id.* at 747 (emphasis added).

[11] *Id.*

5

guideline range had been correctly calculated before it could determine if there had been an upward departure from "the [G]uidelines."[12]  Here, we must likewise determine whether the guideline range was correctly calculated before we can determine if Harris's sentence is in excess of "the Guidelines."

The government seems concerned that interpreting "in excess of the Guidelines" to mean in excess of the correctly calculated guidelines would allow Harris to raise any number of issues on appeal and effectively undercut most of the waiver's effect.  That may be so.  But we must construe the waiver as it is written.  When exceptions to waivers of appeal have been written broadly, this court has given effect to that breadth even though it meant that few appellate rights were waived.[13]  In *United States v. Somner*, the waiver provided:

> [T]he defendant agrees to voluntarily waive the right to appeal . . . the sentence or the manner in which it was determined . . . .  However, the defendant may appeal a sentence: . . . (b) that includes an upward departure from the Sentencing Guidelines, which upward departure had not been requested by the United States Attorneys Office or (c) that includes or is based on a material and unlawful misapplication of the Sentencing Guidelines by the Court.[14]

The defendant in *Somner* challenged several upward adjustments, the calculation of his criminal history, and an upward departure from the Guidelines.  This court held that the waiver foreclosed review of only the upward departure, which had been requested by the government.[15]

_____

[12]*Id*. at 746 (reciting that the defendant agreed "appeal is waived 'unless the Court upwardly departs from the guidelines'").

[13]*See United States v. Somner*, 127 F.3d 405, 407-08 (5th Cir. 1997).

[14]*Id*. at 407.

[15]*Id.* at 408.

We must address the substance of Harris's contention that his offense was not a federal crime of terrorism. We review the district court's interpretation and application of the Guidelines *de novo* and its factual findings for clear error.[16]

### III

Upward adjustments were to be applied under section 3A1.4 of the Sentencing Guidelines "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism."[17] The notes to section 3A1.4 state that "[f]or the purposes of this guideline, 'federal crime of terrorism' has the meaning given that term in 18 U.S.C. § 2332b(g)(5)."[18] Section 2332b(g)(5) contains the following definition:

> (g) Definitions.–As used in this section–
>
> * * *
>
> (5) the term "Federal crime of terrorism" means an offense that–
>
> (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and
>
> (B) is a violation of–
>
> (i) . . . 844(f)(2) or (3) (relating to arson and bombing of Government property risking or causing death), 844(i) (relating to arson and bombing of property used in interstate commerce), 930(c) (relating to killing or attempted killing during an attack on a Federal facility with a dangerous weapon) . . . .[19]

---

[16]*United States v. Solis-Garcia*, 420 F.3d 511, 513-14 (5th Cir. 2005); *United States v. Creech*, 408 F.3d 264, 270 (5th Cir. 2005); *United States v. Villanueva*, 408 F.3d 193, 202-05 (5th Cir. 2005); *United States v. Villegas*, 404 F.3d 355, 359-62 (5th Cir. 2005); *see also United States v. Holmes*, 406 F.3d 337, 363 (5th Cir. 2005) (stating, in the course of reviewing an enhancement, "We review a district court's finding of obstruction of justice for clear error.").

[17]U.S.S.G. § 3A1.4.

[18]*Id.* at cmt. n.1.

[19]18 U.S.C. § 2332b(g)(5).

Harris concedes that he pleaded guilty to a violation of 18 U.S.C. § 844(i) and therefore that the second prong of the definition of a federal crime of terrorism is met. But he asserts there is no evidence that his offense was calculated to influence or affect the government's conduct by intimidation or coercion, or to retaliate against government conduct. He also argues that his offense did not transcend national boundaries.

With respect to the latter argument, it is true that to establish a violation of 18 U.S.C. § 2332b, the conduct at issue must transcend national boundaries.[20] But the Sentencing Guidelines do not predicate an upward adjustment on a violation of section 2332b.[21] Section 3A1.4 of the Guidelines only references the specific definition in 18 U.S.C. § 2332b(g)(5) and imports that definition for the purpose of describing what constitutes a federal crime of terrorism for sentencing enhancement purposes. The definition of a "federal crime of terrorism" in 18 U.S.C. § 2332b(g)(5), which is incorporated into section 3A1.4, encompasses many offenses, none of which has as an element requiring conduct transcending national boundaries. All that section 3A1.4 requires for an upward adjustment to apply is that one of the enumerated offenses was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."[22]

---

[20]*Id.* § 2332b(a) (providing, as a predicate to an offense, that conduct must transcend national boundaries).

[21]*Accord United States v. Nichols*, 169 F.3d 1255, 1270 n.3 (10th Cir. 1999) (noting that but for ex post facto concerns, section 3A1.4 would "no doubt" have applied to a purely domestic conspiracy to bomb a federal building in Oklahoma City). *But see United States v. Salim*, 287 F. Supp. 2d 250, 330-54 (S.D.N.Y. 2003) (concluding that section 3A1.4 may not apply to purely domestic activities).

[22]18 U.S.C. § 2332b(g)(5).

In reviewing whether there was evidence to support the district court's conclusion that Harris's offense was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," we review that court's factual findings for clear error.[23] "'If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently,'"[24] or similarly, a factual finding is not clearly erroneous unless "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[25] The district court did not clearly err.

Harris pleaded guilty to maliciously damaging and destroying a municipal building by means of fire and explosive materials, in violation of 18 U.S.C. § 844(i), and furthering that crime of violence with a destructive device, in violation of 18 U.S.C. § 924(c)(1). Harris used a "Molotov cocktail" to cause an explosion in and set fire to the City of Monahans Muncipial Building. Harris testified that his sole intent was to destroy evidence that related to his father's arrest and that he thought the building was empty when he threw the Molotov cocktail. The fire was started around midnight in the room where evidence against his father was stored. However, the record reflects that Harris had himself been arrested twice within a few days prior to the fire by the Monahans Police Department, which was housed in the targeted building, and twenty-four hours before his offense,

---

[23]*United States v. Villanueva*, 408 F.3d 193, 202 (5th Cir. 2005); *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005).

[24]*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)); *see also Amadeo v. Zant*, 486 U.S. 214, 223 (1988).

[25]*United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

9

Harris was held in the same room in which he started the fire. A retaliation charge was brought against Harris for threatening to kill a police officer. That charge was subsequently dropped. But the evidence, in the aggregate, is sufficient to support a finding that Harris was motivated to start the fire by an intent to retaliate against or to intimidate the officers who had arrested him and were pursuing charges against his father.

## IV

Finally, Harris contends that the district court erred in basing his sentence on facts neither admitted by him nor found by a jury, citing *United States v. Booker*.[26] Harris did not raise this issue in the district court. More importantly, Harris has not raised any argument that this *Booker* issue survives his waiver of appeal.[27] Even assuming that it was not waived, Harris's *Booker* complaint has no merit. He must establish (1) error, (2) that is plain, and (3) that affects substantial rights.[28] For an error to affect substantial rights, the defendant must show that the error "affected the outcome of the district court proceedings."[29] This standard requires the defendant to "demonstrate a probability 'sufficient to undermine confidence in the outcome.'"[30] There is no indication in the record that the district court would have imposed a lesser sentence had sentencing been under the *Booker* advisory regime rather than the pre-*Booker* mandatory regime.[31]

---

[26]125 S. Ct. 738 (2005).

[27]*Cf. United States v. McKinney*, 406 F.3d 744, 746-47 (5th Cir. 2005).

[28]*Johnson v. United States*, 520 U.S. 461, 467 (1997).

[29]*United States v. Mares*, 402 F.3d 511, 521 (5th Cir. 2005) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)), *cert. denied*, 126 S. Ct. 43 (2005).

[30]*Id.* (quoting *United States v. Dominguez Benitez*, 124 S. Ct. 2333, 2340 (2004) (internal quotation marks and citation omitted)).

[31]*See id.* at 521-22.

Because Harris's sentence was within the applicable Guidelines range, he has waived any right to appeal that sentence. Accordingly, this appeal is DISMISSED.